**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUCAS SIROIS<br>ROBERT SIROIS<br>LAKEMONT, LLC<br>SANDY RIVER PROPERTIES, LLC<br>SPRUCE VALLEY, LLC | Criminal No. 1:21-cr-00175-LEW |

**GOVERNMENT'S TRIAL BRIEF**

**I.  STATUS OF THE CASE**

  A. This matter is scheduled for jury selection before United States Magistrate Judge John C. Nivison on November 5, 2025, with trial to commence before Chief United States District Judge Lance E. Walker on November 12, 2025. The parties have consented to jury selection before the Magistrate Judge.

  B. The government is expecting to call approximately 25 witnesses in its case-in-chief, dependent in part on whether the parties can reach stipulations as the authenticity of various materials.

  C. The government expects to complete its presentation in approximately four days.

**II.  STATEMENT OF THE CASE**

  The Superseding Indictment (ECF No. 595) charges defendant Lucas Sirois in five counts, defendant Robert Sirois in two counts, and defendants Lakemont, LLC, Sandy River Properties, LLC, and Spruce Valley, LLC (together, the "Corporate Defendants") each in one count.

1

Count One alleges that Lucas Sirois and Robert Sirois (together, the "Sirois Defendants") knowingly and intentionally conspired with each other and others known and unknown to manufacture, distribute, and possess with intent to distribute marijuana and marijuana plants, in violation of Title 21, United States Code, Section 841(a)(1). Count One further alleges that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A) apply to the conduct of Lucas Sirois, in that his conspiracy conduct, including the reasonably foreseeable conduct of other members of the conspiracy, involved 1000 or more marijuana plants and 1000 kilograms or more of marijuana. Specifically, the Sirois Defendants cultivated and distributed bulk marijuana from at least 374 High Street in Farmington, and 105 Avon Valley Road in Avon, during the conspiracy period.

Count Two alleges that the Sirois Defendants knowingly and intentionally possessed with the intent to distribute marijuana and marijuana plants, in violation Title 21, United States Code, Section 841(a)(1). Count Two further alleges that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A) apply to the charged conduct of Lucas Sirois. Specifically, the Sirois Defendants possessed with the intent to distribute bulk marijuana at both 374 High Street and 105 Avon Valley Road on about July 21, 2020.

Count Three alleges that Lucas Sirois willfully and knowingly executed and attempted to execute a scheme and artifice to defraud the Franklin Somerset Federal Credit Union ("FSFCU"), the deposits of which were then insured by the National Credit Union Administration, and to obtain money and other property controlled by the financial institution, by means of false and fraudulent pretenses, representations and

promises. Specifically, Lucas Sirois falsely warranted to FSFCU that no portion of any proceeds deposited at any account he maintained at FSFCU would be derived directly or indirectly from any marijuana-related businesses. In fact, nearly all the funds deposited in Lucas Sirois's accounts, to include the Lakemont operating account, were proceeds of marijuana sales.

Count Four alleges that Lucas Sirois intentionally and knowingly conspired with others to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in collecting income taxes for tax years 2017 and 2018, in violation of Title 18, United States Code, Section 371. Specifically, Lucas Sirois instructed his tax preparer, Kenneth Allen, to arrange so that he did not have to pay federal taxes for the years in question. In accordance with Lucas Sirois's wishes, Allen prepared a fraudulent amended return for 2017 and a fraudulent return for 2018 which largely eliminated Lucas Sirois's tax liability for those years, by reflecting fraudulent transactions that were retroactively conceived, and which did not occur.

Counts Five alleges that Lucas Sirois willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar years 2017 and 2018, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040, for tax year 2017, and a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for tax year 2018, which were submitted to the Internal Revenue Service, in violation of Title 26, United States Code, Section 7201.

Counts Six through Eight allege that the Corporate Defendants each maintained drug premises (374 High Street and 107 Avon Valley Road) during the conspiracy period;[1] that is, the Corporate Defendants unlawfully and knowingly used and maintained these drug premises for the purpose of manufacturing and distributing marijuana, in violation of Title 21, United States Code, Section 856(a)(1).

The government's case-in-chief will include testimony from coconspirators, federal and state investigators, civilian witness chemists, and others. The government will move for the introduction and admission of physical evidence, including controlled substances, and an assortment of other evidence seized in Maine. The evidence will also include photographs and video clips taken during the execution of search warrants, drug ledgers, and business records from companies, including financial institutions, data recovered from coconspirators' cellular phones, wiretap recordings, and corresponding transcriptions.

The government anticipates that the evidence will demonstrate that from at least 2016 until July 21, 2020, the Sirois Defendants engaged in a conspiracy to manufacture and distribute large amounts of marijuana in and around Franklin County. The evidence

---

[1]   For Counts Six through Eight, the Superseding Indictment erroneously describes the conspiracy period as "no later than 2016, and continuing through at least June 21, 2020[,]" when in reality, the conspiracy period ended on about July 21, 2020 (as correctly alleged in Counts One and Two). These typographical errors, while regrettable, do nothing to diminish the sufficiency of the Superseding Indictment. *See United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (An indictment need only outline "the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense;" and a court "must reject arguments that embrace technical niceties at the expense of common sense" in evaluating motions to dismiss an indictment for insufficiency). Here, the erroneous end-date of the conspiracy reflected in Counts Six through Eight of the Superseding Indictment does not muddy the waters. As of this writing, the defendants have known the precise contours of the allegations against them for nearly five years.

will demonstrate that the conspiracy manufactured marijuana at locations including 374 High Street in Farmington, and 105 Avon Valley Road in Avon, among other locations.

Cooperating defendants and will testify about the Sirois Defendants roles in the conspiracy, including Lucas Sirois's management of the conspiracy's operations, his oversight of subordinate conspirators, and his receipt of significant proceeds from the conspiracy's operations. These witnesses will also provide information detailing Robert Sirois's role in the conspiracy, which included significant responsibility for cultivating and curing marijuana at conspiracy locations, transporting marijuana between facilities, and providing guidance and oversight to lower-level conspiracy members with day-to-day cultivation responsibilities.

On July 21, 2020, law enforcement officers executed numerous search warrants across Franklin County. Among the places searched were 374 High Street and 105 Avon Valley Road. The evidence will show that at 374 High Street, agents recovered more than 469 kilograms of processed marijuana and more than 1800 marijuana plants; at 105 Avon, agents found more than 25 kilograms of processed marijuana and more than 1180 plants. The evidence will also show that Lucas Sirois and his coconspirators controlled operations at 374 High Street and 105 Avon Valley Road through the Corporate Defendants.

Lucas Sirois opened numerous accounts at FSFCU during the conspiracy period, including, in about January 2017, the operating account for Lakemont, LLC. On about January 10, 2020, Lucas Sirois was asked by FSFCU to execute additional documents associated with the account; these included the following attestation, which Lucas Sirois affirmed: "I hereby warrant to the Credit Union that no portion of any proceeds deposited to any account I maintain in any capacity at the Franklin-Somerset Federal

Credit Union will be derived directly or indirectly from any Marijuana-Related Business, or any other illegal activity." In fact, nearly all the funds that were deposited into the Lakemont operating account—including more than $4 million in cash—were the proceeds of marijuana sales.

The evidence will further show that in spring 2019, Lucas Sirois advised his tax preparer, Kenneth Allen, that he did not wish to pay federal taxes for tax years 2017 and 2018. In order to comply with Lucas Sirois's instructions, Allen concocted a scheme to eliminate Lucas Sirois's federal tax burden for those years. Allen suggested to Lucas Sirois that by creating fictitious historical transactions that would move money from Lucas Sirois's profitable businesses to his non-profitable businesses, Lucas Sirois could essentially zero-out his tax burden for 2017 and 2018. Allen followed up an in-person meeting with email communications memorializing the scheme and suggesting specific transactions that would accomplish this goal—transactions that were backward looking, had no correlation to the books and records of the relevant businesses, and which never occurred. Lucas Sirois approved, and Allen proceeded to file fraudulent tax returns for 2017 and 2018 which Lucas Sirois then executed, causing losses to the IRS of more than $450,000.

## III. STATUTES VIOLATED

### A.    21 U.S.C. § 846

Any person who...conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the...conspiracy.

B.     21 U.S.C. § 841(a)(1)

[I]t shall be unlawful for any person knowingly and intentionally to manufacture…possess with the intent to…distribute…a controlled substance….

C.     21 U.S.C. § 841(b)(1)(A)

In the case of a violation of subsection (a) of this section involving…1000 kilograms or more of marijuana or 1000 or more marijuana plants …such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life….

D.     18 U.S.C. § 1344

Whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises … shall be [punished].

E.     18 U.S.C. § 371

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be [punished].

F.     26 U.S.C. § 7201

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be [punished].

7

G.   **21 U.S.C. § 856(a)(1)**

[I]t shall be unlawful to (1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance[.]

IV.  **EVIDENTIARY MATTERS**

The government anticipates the following evidentiary issues:

A.   **Coconspirator Statements**

Statements made by a coconspirator are admissible against a defendant as non-hearsay under Fed. R. Evid. 801(d)(2)(E). *See United States v. Goldberg*, 105 F.3d 770, 775 (1st Cir. 1997); *United States v. Saccoccia*, 58 F.3d 754, 778 (1st Cir. 1995). To admit such statements against a defendant, the Court must find by a preponderance of the evidence, "that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy...." *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977); *see also United States v. Martorano*, 557 F.2d 1, 11 (1st Cir. 1977). In making that determination, the Court may consider hearsay including the challenged statement itself. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

Coconspirator statements may be admitted conditionally, prior to a demonstration that the defendant against whom they are offered participated in the scheme, so long as the existence of the conspiracy and the defendant's participation is established by the close of all of the evidence. *Bourjaily*, 483 U.S. at 176; *United States v. Ciampaglia*, 628 F.2d 632, 637-38 (1st Cir. 1980); *United States v. Fontanez*, 628 F.2d 687, 689 (1st Cir. 1980). A final determination as to admissibility should be made on the record at the conclusion of the defense evidence, if any. *Ciampaglia*, 628 F.2d at

8

638. Until that time, however, the order of proof rests in the discretion of the trial court. *United States v. Hathaway*, 534 F.2d 386, 401 (1st Cir. 1976).

### B. Audio Recordings and Transcripts

The government anticipates offering audio recordings of conversations of various conspirators, including the Sirois Defendants, intercepted during the periods of the wiretaps. The government anticipates that witnesses will testify regarding the operation of the equipment used as part of the court-ordered wiretap interceptions, which will establish sufficient foundation for the recordings' admission. The government will also offer evidence identifying the speakers in the offered conversations as part of establishing that the statements are admissible as a particular defendant's admissions or as coconspirator statements.

Like most surreptitious recordings, portions of one or more recordings may be inaudible. The mere fact that portions of a recording are inaudible does not require the exclusion of the entire recording. *United States v. Doyan*, 194 F.3d 207, 212-13 (1st Cir. 1999). In *Doyon*, the First Circuit stated, "[a]n accurate tape recording of part of a conversation is not inherently less admissible than the testimony of a witness who heard only part of a conversation and recounts the part that he heard." *Id.* at 213. In determining the admissibility of the recording, Fed. R. Evid. 403 should be employed. The *Doyon* Court stated:

> This brings us to the real issue, which is whether the tapes' probative value was substantially outweighed by their tendency to mislead on account of the missing portions. Fed.R.Evid. 403. Such judgments, as to which the trial judge has considerable latitude, (citation omitted), require a certain amount of imagination wherever the exact content of the omitted portion is unknown. But the recorded portion of the conversation may contain straightforward admissions

9

> and there may be no reason to suspect that they were qualified by anything said in the omitted portions.

*Id.* at 213 (internal citation omitted).

In addition to offering some recordings of conspirators' conversations, the government intends to present transcripts of the recordings played during trial. The Court has discretion to permit jurors to use transcripts as an aid while they listen to audio recordings. *United States v. Rengifo*, 789 F.2d 975, 979 (1st Cir. 1986). If jurors are permitted to have transcripts, the Court should instruct the jury that it is the words that they hear that are decisive, not those that they read in the transcripts. *Id.* If the defense and prosecution disagree on the contents of portions of a recording, the jurors may be given properly authenticated transcripts of both versions. *Id.* at 982-83. The recording may be played as the jurors look at one transcript and replayed as the jurors look at the other transcript. *United States v. Chiarizio*, 525 F.2d 289, 293 (2d Cir. 1975).

### C.     Drug Exhibits

The government will offer as trial exhibits representative samples of seized marijuana. The forensic chemists are expected to testify regarding their analyses of these substances. Chain of custody witnesses are expected to also testify. To the extent there are any breaks in the chain of custody, these gaps go to the weight given to the evidence rather than its admissibility. *United States v. Abreu*, 952 F.2d 1458, 1467 (1st Cir. 1992).

### D.     Lay Opinion Testimony Pursuant to Fed. R. Evid. 701

During trial, the government may seek to elicit testimony from an experienced drug investigator regarding jargon relating to narcotics trafficking, the role of firearms as "tools of the trade" in drug trafficking, as well as the significance of

certain items seized during execution of search warrants. Such testimony that assists the jury, and which is sufficiently grounded on personal knowledge and susceptible to cross-examination, is admissible. *United States v. Paiva*, 892 F.2d 148, 157 (1st Cir. 1989). Rule 701 extends to experienced drug enforcement agents who testify as lay witnesses about the methods of operation of drug traffickers. *See, e.g., United States v. Rivera-Santiago*, 107 F.3d 960, 968 (1st Cir. 1997) (experienced customs agents' testimony that proximity of marijuana bales to each other indicated they were dropped from plane helped jury understand defendants' involvement in airdrop); *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995) (based on experience, police officer could testify as lay witness that it was common for drug traffickers to use weapons to protect drugs; opinion was helpful to determination of whether defendant was involved in drug trafficking).

    **E.**    **Business Records**

Hearsay statements may not be admitted unless they fall within an exception or exclusion to the hearsay rules. Fed.R.Evid. 802. Under the business records exception, records kept in the course of regularly conducted business activity are admissible unless the circumstances indicate lack of trustworthiness. Fed.R.Evid. 803(6). The foundational requirements for Rule 803(6) are: (1) [that] the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the records in the regular course of the business activity; and (4) that such records were regularly kept by the business. *United States v. Reilly*, 33 F.3d 1396, 1413 (3d Cir. 1994).

It is unnecessary for the record's author or custodian to provide the foundational evidence for the admission of a business record. Fed.R.Evid. 803(6). A qualified witness need only be a person who can explain how a record was kept, not necessarily be the person who actually prepared the record. *United States v. McGill*, 953 F.2d 10, 14-15 (1st Cir. 1992) (assistant supervisor of bank's coupon collection center competent to lay foundation); *United States v. Patterson*, 644 F.2d 890, 900-01 (1st Cir. 1981); 4 J. Weinstein, *Weinstein's Evidence*, ¶ 803(6)[02]; *Wallace Motor Sales, Inc. v. American Motor Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985). A witness is qualified if he is familiar with the record-keeping system and can attest to the foundational requirements. *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993).

It is unnecessary under Rule 803(6) for the proponent of a business record to produce or identify the specific individual upon whose first-hand knowledge the record was based. *See* 30B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Federal Rules of Evidence*, § 7047 (2001). Instead, "Rule 803(6) is based upon the realization that the dependability of regular entries rests upon proof of a routine of making accurate records, rather than upon the testimony of each participant that he himself was accurate. Lack of personal knowledge of the entrant or maker may be shown to affect the weight to be given to the record, but does not affect its admissibility." *Id.*; *see also United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (recognizing that Rule 803(6) does not require the witness who lays the foundation "to be the author of the record or be able to personally attest to its accuracy") (citations omitted). Likewise, Rule 803(6) does not require the business which has custody of the records to be the business which actually created the records. *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992) (invoice received from other company properly admitted).

The government may offer into evidence documents that are records of regularly conducted business activity, including records from two hotels, a landlord, and a storage facility. As such, they are admissible as exceptions to the hearsay rule pursuant to Rule 803(6) of the Federal Rules of Evidence. The government anticipates using Certificates of Authenticity pursuant to Rule 902(11) of the Federal Rules of Evidence to avoid having to call any record custodians to establish that the documents in question are authentic records of regularly conducted business activities. However, the government reserves the right to have witnesses explain any records that are not self-explanatory.

### F.     Summary Charts

In an effort to assist the jury in understanding voluminous documents admitted into evidence at trial (including but not limited to drug ledgers), the government may offer summary charts prepared by witnesses in accordance with Rules 1006 and 611 of the Federal Rules of Evidence. *See United States v. McElroy*, 587 F.3d 73 (1st Cir. 2009); *United States v. Milkiewicz*, 470 F.3d 390, 395-396 (1st Cir. 2006); *United States v. Nivica*, 887 F.2d 1110, 1126 (1st Cir. 1989).

### G.     Other Acts Evidence & Rule 404(b)

Rule 404(b) of the Federal Rules of Evidence governs the admission of evidence of other crimes, wrongs, or acts and prohibits the admission of such evidence to prove that the defendant has the propensity to commit crimes of the sort for which he is on trial:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

13

Fed. R. Evid. 404(b). "The most striking aspect of the rule is its inclusive rather than exclusionary nature: should the evidence prove relevant in any other way it is admissible, subject only to the rarely invoked limitations of Rule 403." *United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir. 1984); *see also United States v. Escobar-de Jesus*, 187 F.3d 148, 169 (1st Cir. 1999).

The First Circuit uses a two-part test to determine the admissibility of 404(b) evidence. *United States v. Houle*, 237 F.3d 71, 77-78 (1st Cir. 2001). As the First Circuit stated in *Houle*,

> First, the evidence must be specially probative of an issue in the case--such as intent or knowledge--without including bad character or propensity as a necessary link in the inferential chain. The probative value of the evidence must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged. Second, if the proffered evidence has special relevance, it is nonetheless inadmissible if its probative value is substantially outweighed by the danger of, inter alia, unfair prejudice, confusion of the issues, or misleading the jury.

*Id.* (internal punctuation and citations omitted).

The government anticipates seeking to offer evidence of Robert Sirois's 2010 conviction for unlawful trafficking in scheduled drugs and cultivating marijuana in violation of 17-A MRSA 1117(1)(B)(2) in the Franklin County Superior Court, docket number FARSC-CR-2009-00292, under Federal Rule of Evidence 404(b) in support of Counts One and Two as probative of intent, knowledge, absence of mistake, and/or lack of accident. As the First Circuit noted in *United States v. Pelletier*, 666 F.3d 1 (1st Cir. 2011), "the evidence [of a prior drug conviction] was probative of Pelletier's knowledge and intent, and served to rebut inferences raised in cross-examination." *Id.* at 6.

Introduction of such evidence in a specific intent drug charge is highly relevant and not unfairly prejudicial. *See, e.g., United States v. Lucas*, 521 F.3d 861, 865 (8th Cir.

14

2008) ("'Evidence of similar drug activity is admissible in a drug prosecution case because a defendant's complicity in other similar transactions serves to establish intent or motive to commit the crime charged.'"); *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (Defendant's plea of not guilty made his intent a material issue, prior arrest was relevant to intent at issue in charged conspiracy, and district court did not abuse its discretion in finding that prior offense was proximate enough to be more probative than prejudicial.); *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) (explaining that "[a] similarity between the other act and the charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense"); *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997) ("A not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent."); *see also United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997) ("a not guilty plea in a drug conspiracy case, such as we have here, makes intent a material issue and opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of a defendant's intent.").

    As is set forth more fully in the government's motion in limine regarding Rule 404(b) evidence, evidence of Robert Sirois's prior felony convictions for trafficking and cultivating marijuana is highly probative in this case because it has a special relevance to the conspiracy charged in Counts One and Two of the Superseding Indictment, and this evidence is not unfairly prejudicial. *See United States v. Agramonte-Quezada*, 30 F.4th 1, 15 (1st Cir. 2022).

## V.   DRUG QUANTITY DETERMINATION

    For Counts One and Two, the jury should be asked to make a determination

concerning the amount of marijuana cultivated, distributed, and possessed with the intent to distribute by the conspiracy, and make an individualized determination of each charged defendants' responsibility for the distribution of a controlled substance for which an enhanced mandatory minimum might apply. *See United States v. Pizarro*, 772 F.3d 284, 293-94 (1st Cir. 2014).

## VI. STIPULATIONS

The parties have not yet agreed on any stipulations.

## VII. CONCLUSION

The government respectfully requests leave of the Court to supplement this trial brief between the time of filing and the time of trial in order to address any additional issues that may arise in the interim, or in the event that the matters discussed herein require further development.

Dated: October 28, 2025                                     Respectfully submitted,

                                                            ANDREW B. BENSON
                                                            United States Attorney

                                                    By:     */s/Noah Falk*
                                                            Noah Falk
                                                            Andrew McCormack
                                                            Assistant U.S. Attorneys
                                                            United States Attorney's Office
                                                            100 Middle Street
                                                            Portland, ME 04101

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October 29, 2025, I electronically filed the Government's Trial Brief with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

ANDREW B. BENSON
United States Attorney

By:    */s/ Kate Whalen*
        Paralegal Specialist

On Behalf Of:   Noah Falk
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street
Portland, ME 04101
(207) 780-3257
Noah.Falk@usdoj.gov