**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| -against- | )   Case No. 1:21-cr-00175-LEW |
| | ) |
| LUCAS SIROIS, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING PURSUANT TO 18 U.S.C. § 3143(a)**

Defendant Lucas Sirois, through undersigned counsel, respectfully moves this Court for release pending sentencing pursuant to 18 U.S.C. § 3143(a). Mr. Sirois has been detained since November 7, 2025—over three months—based on a bail revocation order (ECF 672) that rested primarily on allegations that Mr. Sirois illegally received firearms while under indictment and made threatening statements to a witness. Both pillars of that detention order have now collapsed: the government has dismissed the firearms case, and the witness has formally clarified to the FBI that the affidavit mischaracterized her statements. Mr. Sirois's continued detention is causing him physical harm due to the facility's failure to provide adequate medical care despite repeated requests.

**I. LEGAL STANDARD**

Because Mr. Sirois was convicted of offenses described in 18 U.S.C. § 3142(f)(1)(C), his release pending sentencing is governed by 18 U.S.C. § 3143(a)(2). Under that provision, the Court shall order detention unless it finds:

> **(A)** there is a **substantial likelihood that a motion for acquittal or new trial will be granted**; or
>
> **(B)** an attorney for the Government has recommended that no sentence of imprisonment be imposed; or

1

**(C)** the court finds by clear and convincing evidence that the person is not likely to flee or pose a danger, and the offense is not one described in § 3142(f)(1)(A)-(C).

Mr. Sirois seeks release under **§ 3143(a)(2)(A)**: there is a substantial likelihood that his pending motions for a new trial will be granted. In evaluating this question, the Court considers the factors set forth in 18 U.S.C. § 3142(g).

## II. THE FACTUAL BASIS FOR DETENTION HAS COLLAPSED

### A. The Government Has Dismissed the Firearms Case

On February 11, 2026, the government moved to dismiss the firearms complaint, stating that "further prosecution of the Defendant in this matter is no longer in the interest of justice." *See* Case No. 1:25-mj-00368-JCN, ECF 26. The Court granted the motion on February 12, 2026. *See id.*, ECF 27.

This eliminates the primary basis for the detention order. The Court's finding of probable cause to believe Mr. Sirois committed a federal crime while on release rested on the firearms charge under 18 U.S.C. § 922(n). The government's own determination that prosecution is no longer warranted undermines that finding and, with it, the Court's conclusion that "the nature and seriousness of the danger presented" required detention.

### B. The Witness Has Formally Clarified That the Affidavit Mischaracterized Her Statements

The detention order was also based on the witness's reported statement that Mr. Sirois told her: "I want to let you know that if I get wind this case isn't going right, I am going to end everyone that put me in this position." This statement, as reported in the affidavit of Special Agent Kurt Ormberg, was central to the Court's finding that Mr. Sirois posed a danger to the community.

**Mercedes Lamphere — the witness — has formally clarified to the FBI that the affidavit mischaracterizes her statements.** On February 2, 2026, Ms. Lamphere sent a written statement to Special Agent Ormberg explaining that her purpose in contacting local police on October 31, 2025 "was to request immediate protection for myself following the recent end of my relationship with [Mr. Sirois] and his unannounced visits to my home and business." Ms. Lamphere stated unequivocally:

> At no time did I report or intend to report that Luke was threatening government officials, using firearms to threaten anyone, or posing a danger to the broader community.

She further clarified that "[a]ny references to firearms during my communications were made only in the context of explaining why I was seeking personal safety assistance and were not intended to allege unlawful possession or violent intent." *See* Exhibit A (text message exchange between Ms. Lamphere and Special Agent Ormberg, February 2, 2026). Special Agent Ormberg acknowledged receipt of this clarification, responding: "Received. I will print out what you texted and put it in the case file." *Id.*

**The government dismissed the firearms case nine days later.**

The sequence is telling: Ms. Lamphere's purpose in calling local police was personal safety following the end of a relationship — not to report criminal threats against government officials. The FBI contacted Ms. Lamphere after Mr. Sirois was already arrested and, according to Ms. Lamphere, mischaracterized her statements to construct a narrative of imminent danger that did not reflect what she actually reported. The "danger to community" finding that supported the detention order — that Mr. Sirois was making threats against law enforcement and federal officials and then arming himself to carry them out — was built on a mischaracterization of a personal safety call about a statement made approximately a year earlier.

**C. The Remaining Violations Do Not Support Continued Detention**

The only surviving basis for the detention order is the condition 7(m) violation based on THC products found in Mr. Sirois's vehicle. But these items do not support a finding that Mr. Sirois poses a danger to the community:

The government's own declaration acknowledged that the Long Coast beverage found in the vehicle "appears to be lower than the threshold to meet the definition of a controlled substance under 21 U.S.C. § 802." *See* ECF 647-1 at ¶ 11(e). The remaining items — Capsoil THC sticks and a vial of testosterone cypionate without prescription documentation — are minor regulatory violations that do not, individually or collectively, support a finding that no conditions of release can assure community safety.

**III. THERE IS A SUBSTANTIAL LIKELIHOOD THAT A MOTION FOR NEW TRIAL WILL BE GRANTED**

On February 9, 2026, Mr. Sirois filed a Motion for Leave to Supplement his pending Rule 33 motions to add a ground based on denial of his Sixth Amendment right to counsel of choice. *See* ECF 735. That motion alleges that Mr. Sirois's former attorney, Eric Postow, made materially false representations that fraudulently induced Mr. Sirois to fire his chosen trial counsel, Timothy Parlatore, and proceed to trial with inexperienced substitute counsel, Jason Ehrenberg. The motion further alleges that Mr. Postow's firm filed a knowingly false disciplinary complaint against Mr. Parlatore on June 28, 2024, that the complaint was dismissed on November 22, 2024 — nearly one year before trial — and that Mr. Postow concealed the dismissal throughout trial and post-trial proceedings.

The denial of a defendant's chosen counsel is a **structural error** that requires **automatic reversal without any showing of prejudice**. *United States v. Gonzalez-Lopez*, 548 U.S. 140,

4

148 (2006) (holding that deprivation of counsel of choice is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, and that "it is unnecessary to conduct an ineffectiveness or prejudice inquiry"); *id.* at 150 (holding that erroneous deprivation of the right to counsel of choice "unquestionably qualifies as structural error"); *United States v. Panzardi-Alvarez*, 816 F.2d 813, 818 (1st Cir. 1987) (holding that "[o]btaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceedings"). If the Court grants leave to supplement and finds that Mr. Sirois's waiver of Mr. Parlatore was induced by fraud and was therefore not knowing, intelligent, and voluntary, *see United States v. Proctor*, 166 F.3d 396, 401-02 (1st Cir. 1999) (holding that waiver of the right to counsel "must be stated in unequivocal language" and "must be a knowing, intelligent and voluntary decision," and that "[c]ourts must indulge in every reasonable presumption against waiver of the right to counsel"), a new trial would be required regardless of the strength of the evidence or the quality of substitute counsel's performance. This creates a substantial likelihood that a motion for new trial will be granted.

The disciplinary proceedings underlying this claim were sealed by statute. Under New York Judiciary Law § 90(10), all papers relating to attorney disciplinary complaints "shall be sealed and be deemed private and confidential." 22 NYCRR § 1240.18 confirms that "all disciplinary investigations and proceedings shall be kept confidential." The complaint, the response, and the dismissal were all sealed. There was no public record, no public order of dismissal, and no press coverage. Mr. Sirois had no independent means of verifying Mr. Postow's representations because the proceedings were sealed — and Mr. Postow knew this.

Notably, in opposing ECF 735, the government has assumed the fraud allegations are true for purposes of argument, stating: "Even assuming all information provided by Sirois in his motion is true." ECF 743 at 4. If the fraud allegations are true — if Mr. Postow manufactured a false complaint, used it to pressure Mr. Sirois into firing his chosen counsel, received overwhelming evidence of its falsity, continued to lie about it, and concealed the dismissal throughout trial — then the waiver was invalid and a new trial is required. The government's own arguendo concession supports the "substantial likelihood" standard under § 3143(a)(2)(A).

## IV. MR. SIROIS'S CONDITIONS OF CONFINEMENT ARE CAUSING PHYSICAL HARM

Mr. Sirois's continued detention is not only legally unjustified given the changed circumstances described above, but is also causing him physical harm due to the Piscataquis County Jail's failure to provide adequate medical care.

Since his detention on November 7, 2025, Mr. Sirois has experienced multiple medical conditions requiring evaluation and treatment that the facility has failed to adequately address despite repeated requests. Mr. Sirois has submitted multiple medical slips and formal grievances reporting ongoing symptoms — including symptoms that could indicate serious underlying conditions requiring diagnostic testing — that have gone unaddressed for months. The facility has failed to perform requested diagnostic evaluations, failed to respond adequately to reported symptoms, and on at least one occasion failed to deliver medication that its own medical staff had prescribed.

Mr. Sirois is prepared to provide the Court with additional detail regarding his medical conditions under seal or *in camera* if the Court requires further specificity. However, the pattern is clear: the Piscataquis County Jail has persistently failed to address Mr. Sirois's medical needs

despite repeated requests and formal grievances. These conditions weigh heavily in favor of release on appropriate conditions, where Mr. Sirois can obtain the medical care he requires.

## V. THE POSTOW CONFLICT AFFECTED THE DETENTION PROCEEDINGS

While the Court need not resolve the allegations in ECF 735 to rule on this motion, the conflict directly affected the detention proceedings in ways that warrant brief mention to preserve the record.

At the time of the bail revocation hearing, Mr. Postow and Mr. Ehrenberg represented Mr. Sirois. The defense response (ECF 660) attacked Ms. Lamphere's credibility, characterizing her as financially motivated, dishonest, and a forger. But Ms. Lamphere was also Mr. Postow's own former client — his firm had represented Ms. Lamphere and Maine Coast Line Up, LLC beginning in September 2023.

More fundamentally, Mr. Postow's conflict prevented him from taking the most basic investigative step: **asking Ms. Lamphere whether she had actually made the statements attributed to her**. Any unconflicted attorney would have contacted the witness to verify the government's allegations. Had Mr. Postow done so, he would have learned that Ms. Lamphere's statements had been mischaracterized, and the defense could have presented that critical fact to the Court at the detention hearing.

Indeed, Mr. Postow was uniquely positioned to provide this context. Ms. Lamphere has stated that the statement attributed to Mr. Sirois in the FBI affidavit was made approximately a year before the arrest, and that she had called Mr. Postow at the time it was made. Mr. Postow assessed the statement as insignificant. Yet at the detention hearing, rather than providing this context to the Court — that the statement was a year old and had been assessed as insignificant when it was made — Mr. Postow's team attacked Ms. Lamphere's credibility. An unconflicted

attorney who had firsthand knowledge that the statement was made a year earlier and was considered insignificant at the time would have presented that context to the Court. Mr. Postow's conflict prevented him from doing so.

Documentary evidence further confirms that Mr. Postow actively prevented Mr. Sirois from contacting Mr. Parlatore — the one attorney who could have independently investigated the basis for detention. In a July 25, 2024 email in which Mr. Postow drafted the termination letter for Mr. Sirois to send, Mr. Postow told Mr. Sirois: "you will not be obligated to speak with or correspond with Tim" and "If he seeks to harm you in any way, I will destroy him…in legal ways." Mr. Postow reinforced the false narrative that Mr. Parlatore had committed misconduct: "He did violate the rules and your rights as a client." And on November 27, 2024 — five days after the complaint was dismissed — Mr. Postow was still telling Mr. Sirois that Mr. Parlatore "commit malpractice and doesn't deserve anything more for the stuff he pulled." A client who has been told by his trusted attorney not to communicate with his former attorney, and who is still being told five days after the complaint was dismissed that the former attorney committed malpractice, cannot reasonably be expected to independently investigate those representations.

The connection between Mr. Postow's conflict and Mr. Sirois's prolonged detention is even more direct. According to Ms. Lamphere, Mr. Postow told Mr. Sirois that Mr. Postow could not communicate with Ms. Lamphere about the firearms case until she signed a settlement document releasing all claims against Emergent Beverages, LLC — Mr. Postow's other client. **Mr. Postow explicitly acknowledged to his own client that his obligations to Emergent prevented him from communicating with the one witness who could help secure Mr. Sirois's release.** Rather than recognizing this as a disqualifying conflict and withdrawing or referring the matter to unconflicted counsel, Mr. Postow allowed Mr. Sirois to remain detained

while conditioning his willingness to investigate the basis for detention on Ms. Lamphere first capitulating to the demands of Mr. Postow's other client.

The conflict's impact on Mr. Sirois's detention extended beyond the initial hearing. Following the arrest, Mr. Postow and Mr. Ehrenberg consented to **four consecutive extensions** of the government's time to seek an indictment in the firearms case, keeping Mr. Sirois detained from November 2025 through February 2026. *See* Case No. 1:25-mj-00368-JCN, ECF 18, 20, 22, 24. An unconflicted attorney — particularly one who knew that the release conditions did not include a firearms prohibition and that the witness's statements had been mischaracterized — would have opposed the extensions and forced the government to indict or dismiss. Instead, Mr. Postow consented to each extension, prolonging Mr. Sirois's detention for months in a case the government ultimately dismissed. The question of why defense counsel would consent to keep a detained client in jail on charges that even the investigating agent acknowledged were unlikely to succeed is answered by the conflict: a detained Mr. Sirois could not investigate Mr. Postow's fraud, could not contact Mr. Parlatore, and could not pursue claims against Emergent.

**Mr. Sirois has been detained for over three months in part because his attorney's conflict of interest prevented the most basic investigative steps, the presentation of critical context that was within his personal knowledge, and a vigorous challenge to the government's case — and because Mr. Postow explicitly conditioned his willingness to communicate with the key witness on that witness first signing a document benefiting Mr. Postow's other client.** Now that Mr. Sirois has independent counsel, that investigation has been conducted, and Ms. Lamphere has formally clarified to the FBI that her statements were mischaracterized.

## VI. PROPOSED CONDITIONS OF RELEASE

Mr. Sirois respectfully proposes the following conditions of release, or such other conditions as the Court deems appropriate:

1. GPS/electronic monitoring;
2. Home confinement or curfew as the Court deems appropriate;
3. No possession of firearms, ammunition, or dangerous weapons;
4. Regular drug testing and compliance with all substance-related conditions;
5. No contact with government witnesses except through counsel;
6. Surrender of passport (previously surrendered);
7. Continuation of the $500,000 secured bond or such increased bond as the Court deems appropriate;
8. Regular reporting to Pretrial Services; and
9. Such other conditions as the Court may impose.

## VII. CONCLUSION

Mr. Sirois has been detained for over three months on a foundation that has now collapsed. The firearms case has been dismissed. The witness has formally clarified to the FBI that the affidavit mischaracterized her statements — and the government dismissed the firearms case nine days after receiving that clarification. The remaining violations are minor and do not support continued detention. There is a substantial likelihood that Mr. Sirois's pending motions — particularly the Sixth Amendment claim alleging structural error — will result in a new trial. The government's own evolving approach to marijuana, reflected in Executive Order 14370, reinforces the serious questions raised by those motions. And Mr. Sirois's conditions of confinement are causing him physical harm due to the facility's persistent failure to provide adequate medical care despite repeated requests and formal grievances.

For these reasons, Mr. Sirois respectfully requests that this Court order his release pending sentencing on appropriate conditions pursuant to 18 U.S.C. § 3143(a).

Dated: February 17, 2026

Respectfully submitted,

/s/ Timothy Parlatore

Timothy Parlatore, Esq.
Parlatore Law Group, LLP
*Attorney for Defendant Lucas Sirois*
260 Madison Ave., 17th Floor
New York, New York 10016
timothy.parlatore@parlatorelawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Timothy Parlatore

Timothy Parlatore